Mr. Charles E. Moseley Jr., Chairman Mississippi County Election Commission Mississippi County Courthouse Blytheville, Arkansas 72315
Dear Mr. Moseley:
This is in response to your request for an opinion on two questions concerning the drawing of district lines for a judicial race. Your questions pertain to the inclusion of certain parts of Fletcher and Burdette Townships in judicial subdistricts 2.1 and 2.2. It is my understanding that the preferential primary was held on May 24, 1994 with all of Fletcher and Burdette Townships in judicial subdistrict 2.1. The results of the judicial race necessitated a runoff, which is to be held at the general primary election on June 14, 1994. Your questions with regard to these facts are as follows:
 1. Do your records bear us out that all of Burdette Township and all of Fletcher Township should be in subdistrict 2.1?
 2. If our division lines are in error, should we change our voting precincts between the primary and the run-off?
In response to your first question, the answer is "no." Our records indicate that Fletcher Township is split between the two subdistricts, as shown on the computer map which is attached hereto. Specifically, that which is shown as Precinct 31 and Victoria Precinct 31A in Fletcher Township are included in subdistrict 2.1, the majority black subdistrict. Luxora Precincts 29-1, 29-2, and 29-3, along with Precinct 30, as shown by the census, are in the majority white subdistrict, 2.2. This is the plan which was filed as per the Consent Decree in Hunt v. State, PB-C-89-406. There has been no petition to the Court in that case to change these boundaries.
Burdette Township is completely included in subdistrict 2.1, the majority black subdistrict.
In response to your second question, regarding whether you should "change [the] voting precincts" between the preferential and general primaries, it is my opinion that the answer is "no," if such a change would require changing any precinct boundaries, or voting places within precincts. See A.C.A.7-7-303(a) (Repl. 1993); A.C.A. 7-7-203(f) (Repl. 1993); and A.C.A. 7-5-101(a) (Repl. 1993). These boundaries or voting places may not be changed within thirty days of any primary election. If, however, such a "change" requires only a modification of the ballots in one or more precincts, I can find no state law which would prohibit the correction of the error which occurred in the preferential primary election. Neither, however, have I found any statute specifically addressing a duty to correct the error. Absent any controlling law, it is my opinion that the general primary should be conducted in accordance with the correct district lines and the applicable court order. Of course, if the error which occurred in the preferential primary, or the correction of the error in the general primary, affects the outcome of the election, or has the effect of disenfranchising voters, the candidates involved may pursue their judicial remedies to determine the legality of the actions taken, and the true outcome of the election. See generally Spires v. Compton, 310 Ark. 431,837 S.W.2d 459 (1992).
The foregoing opinion, which I hereby approve, was prepared by Senior Assistant Attorney General Tim Humphries and Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
Enclosure