DOLLARWAY PATRONS for BETTER SCHOOLS and Felix Smart, et al. *v.* DOLLARWAY SCHOOL DISTRICT, Dollarway Board of Education, et al., and Mike Holcomb, County Judge, et al.

08-33                                                                                          286 S.W.3d 123

Supreme Court of Arkansas
Opinion delivered June 26, 2008

*Trimble Law Firm,* by: *Don Trimble;* and *Jack, Nelson, Jones, Fink, Jiles & Gregory, P.A.,* by: *Eugene G. Sayre,* for appellants.

*Laser Law Firm,* by: *Dan F. Bufford* and *Brian A. Brown,* for appellee Dollarway School District and its School Board.

JIM HANNAH, Chief Justice. Dollarway Patrons for Better Schools, Felix Smart, Debbie Jenkins, Jamie Barajas, and Mary Pringos ("DPBS") appeal a decision of the Jefferson County Circuit Court dismissing their complaint as an untimely election contest. DPBS asserts this was error because the complaint did not assert an election contest but rather states a viable cause of action in illegal exaction. According to DPBS, this cause of action asserts that the election was void and, therefore, any tax increase imposed is an illegal exaction.

We hold that DPBS attempted to state a cause of action in illegal exaction, and that the circuit court erred in finding that DPBS alleged a cause of action contesting the election. We reverse and remand this case for consideration under Ark. R. Civ. P. 12(b)(6) and to determine whether DPBS has stated a cause of action in illegal exaction. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(4).

*Facts*

In 2006, the Altheimer School District was consolidated into the Dollarway School District. This created a new school district (School District) that was taxed at two different rates. Those who lived in the area that was formerly the Altheimer School District were taxed at 32.6 mills, while those living in what was the former

Dollarway School District were taxed at 40.8 mills. After consolidation, the new School District requested that the Jefferson County Election Commission set a special election for consideration of a millage increase in taxation. The Election Commission set the election, and a Notice of Election was published that informed the public that the ballot question was whether to raise taxes in the new School District to 42.3 mills. The election was held, and the Election Commission certified that 399 votes had been cast in favor of the new rate of 42.3 mills and 378 votes had been cast against the new rate.

DPBS alleges that the election was void because the School District, as the taxing entity, and as the entity that sought the millage increase, misled the electorate by publishing and circulating information prior to the election that misrepresented the tax increases. The information provided by the School District stated that the increases would be only half as great as the measure voted on imposed. For example, where a person had real estate appraised at $30,000, a School District pamphlet showed that the tax increase for a person living in the former Altheimer School District would be $29.30 per year and for a person living in the former Dollarway School District the tax increase would be $4.50. However, a table in the possession of the School District received from financial advisors prior to the election showed that actual increases would be $58.20 and $9.00 respectively.

### Motion to Dismiss

The School District filed a motion to dismiss under Ark. R. Civ. P. 12(b)(1), arguing a lack of jurisdiction in that the complaint stated a cause of action to contest an election but was barred by a failure to bring the action within twenty days of the election as required by Ark. Code Ann. § 6-14-116. Relying on Ark. R. Civ. P. 12(b)(6), the School District also alleged DPBS stated no cause of action under illegal exaction.

We review a decision on a motion to dismiss by accepting the facts alleged as true and liberally construe them in plaintiff's favor. *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201 (2004). In stating a cause of action, facts must be pled; mere conclusions will not be accepted as facts. *Id.* As to issues of law presented, our review is de novo. *See R.K. Enters., LLC v. Pro-Comp Mgmt., Inc.*, 372 Ark. 199, 272 S.W.3d 85 (2008).

*Ark. R. Civ. P. 12(b)(1)*

DPBS's complaint purports to state causes of action for illegal exaction, declaratory judgment that any taxes collected based on the election constitute an illegal exaction, an injunction against imposition of the taxes, and for costs. The primary allegation in the complaint is that preelection misrepresentations by the Dollarway Board of Education and employees of the School District voided the election. DPBS argues that because the election is void, there is no authority to collect the taxes, and this makes their collection an illegal exaction.[1] DPBS does not allege that there were any irregularities in the election process and does not contest the election results.

The circuit court relied on Ark. Code Ann. § 6-14-116:

(a) If the election of any member of a school district board of directors is contested, it shall be before the circuit court of the county in which the school district is domiciled.

(b) All actions to contest the election shall be commenced within twenty (20) days after the date the election is certified.

(c) Actions to contest the election of school district officers shall follow the procedures set out in § 7-5-801 et seq.

Even though the statute speaks to the election of board members, it has been applied in other school elections. *See, e.g., Douglas v. Williams*, 240 Ark. 933, 405 S.W.2d 259 (1966). The intent of this statute was to "place jurisdiction for the contest of all school election matters in the circuit court." *Adams v. Dixie Sch. Dist. No. 7*, 264 Ark. 178, 182, 570 S.W.2d 603, 605 (1978).

Section 6-14-116(c) (Supp. 2005) provides that an election contest under this section follows the procedures set out in the general election contest procedures set out in the Arkansas Code beginning in Ark. Code Ann. § 7-5-801 (Repl. 2000). Because the

---

[1] This court has stated that two types of illegal-exaction cases arise under article 16, section 13 of the Arkansas Constitution. *White v. Arkansas Capital Corp.*, 365 Ark. 200, 226 S.W.3d 825 (2006). There are public fund cases where it is contended that public funds generated from tax dollars are being misapplied or illegally spent, and there are illegal-tax cases, where it is contended that the tax itself is illegal. *Id.* In the present case, DPBS alleges that an illegal tax is being imposed.

general election contest procedures are followed, this court's discussion in *King v. Davis*, 324 Ark. 253, 255, 920 S.W.2d 488, 489 (1996), is helpful:

> In *Phillips v. Earngey*, 321 Ark. 476, 901 S.W.2d 782 (1995), and in *Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992), we distinguished between election contests and actions brought to declare an election void. We did so, however, only for the purpose of discussing whether an election commission might be a proper party. We did nothing in those cases to disturb the conclusion we reached in *Files v. Hill, supra*, that "the mere fact that one bringing suit only seeks to have the election declared void and does not seek the office for himself, or even for the candidate he espouses, does not keep the proceeding from being categorized as an election contest." *See also Spires v. Election Comm'n of Union County*, 302 Ark. 407, 790 S.W.2d 167 (1990).
>
> There thus are two types of election contests. When it is of the type where the contestant seeks to oust and replace the certified winner, the proof must be as we stated in *Binns v. Heck, supra*, but a contest of the election in general, seeking to have it declared void altogether is different.

This court in *Files v. Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980), noted that in an election contest an election may not be voided for actions less grave than those set out in *Patton v. Coates*, 41 Ark. 111 (1883). In *Patton*, fraud and coercion made it impossible to count votes; thus, the vote count was at issue. In *Files* the issue was again the vote count.

Thus, while there are two forms of election contests, both types concern counting the votes. The first type of election contest is a demand that votes be counted, recounted, or otherwise determined. The second type of election contest is one where the votes, though cast, cannot be counted. The inability to count votes voids the election. *See Files, supra.* Both forms of election contest concern counting the votes, and both seek to invalidate an election based on the results of the election.

DPBS does not seek to invalidate the results of the election. It does not seek to have votes counted or recounted, nor does it claim that votes cannot be counted. Rather, DPBS alleges that there was no authority to hold the election at all. The cases cited by DPBS allow for an action to void an election on this basis. In

*Phillips v. Rothrock*, 194 Ark. 945, 110 S.W.2d 26 (1937), Phillips brought suit to enjoin disbursement of revenues collected under an initiative act. The challengers questioned the existence of the act authorizing the election. This was based on several grounds including that the "submission of the question at the election was unauthorized under amendment No. 7 . . . and that act No. 1, therefore, did not become law notwithstanding the favorable vote thereon." *Phillips*, 194 Ark. at 947, 110 S.W.2d at 28. This court stated as follows:

> That such suits are not election contests has been recognized in all the similar cases which have come before this court, and that any citizen or taxpayer may institute a proper suit to prevent unauthorized and illegal diversion of public funds is a proposition of law which this court has frequently announced, and the right of the individual citizen to be thus heard has always been enforced.

*Phillips*, 194 Ark. at 948, 110 S.W.2d at 28. In *Phillips*, the court concluded that the proposed act was never properly presented to the voters and that "there was no authority for holding the election, and it is, therefore, a nullity." *Phillips*, 194 Ark. at 960, 110 S.W.2d at 34.

In *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), the preamble to the ordinance authorizing the election stated that the estimated cost of the power plant was $65,000; however, $65,000 was actually the amount that could legally be raised through the sale of bonds. The cost of the plant was in excess of the $65,000 stated in the preamble. Further, the ballot title was interpreted by the court to mean that the plant would be constructed for the sum raised by the bonds. Use of funds other than the bond funds to construct the plant constituted an illegal exaction.[2]

---

[2] The issue was raised more recently in *Williams v. City of Fayetteville*, 348 Ark. 768, 76 S.W.3d 235 (2002); however, the wording in the ballot title and documents in *Williams* did not limit funding as was the case in *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949). We are also cited to *McGhee v. Arkansas State Bd. of Collection Agencies*, 360 Ark. 363, 201 S.W.3d 199 (2005); however, that case concerned alleged illegal exaction in the use of general funds by the Board in an alleged violation of an act of the General Assembly. It is not on point. In *Alcoholic Beverage Control Division v. Barnett*, 285 Ark. 189, 685 S.W.2d 511 (1985), an election held in 1956 was at issue, and the Division argued that the action had to be brought within twenty days because it was an election contest. However, the issue of whether it was an election contest was not reached in *Barnett*.

■ A cause of action alleging that an election is a nullity because the election was illegally held is not an election contest under section 7-5-801 or under school elections section 6-14-116. DPBS argues that the election was not legally held, and that it is a nullity due to misrepresentations regarding the increase in taxation that were made by the School District. DPBS thus alleges that the election itself was illegal. It does not contest the results of the election. Therefore, DPBS attempted to plead a cause of action in illegal exaction, and the circuit court erred in dismissing the case under Ark. R. Civ. P. 12(b)(1) as an untimely election contest.

## *Ark. R. Civ. P. 12(b)(6)*

In addition to alleging error under Ark. R. Civ. P. 12(b)(1), the School District argued that DPBS's complaint fails to state a claim upon which relief can be granted. DPBS argues that the School District as a governmental entity voided the election by misrepresenting the amount of the tax increase that would result if the measure passed. DPBS acknowledges that this court's precedent thus far has voided elections only where the voters were misled by representations in the title of the ordinance, the preamble to the ordinance, the body of the ordinance, the notice of the election, the ballot title, or the body of the proposition. This court has stated that "[i]t is to these sources just mentioned that the electors had the right to look to ascertain what they were asked to approve, and not discussions in the Council meetings, or street conversations, or to speeches made at a mass meeting which may or may not have been largely attended." *City of Rector*, 214 Ark. at 654, 217 S.W.2d at 337. However, DPBS argues that the law concerning whether an election will be voided should be expanded to include the School District's conduct in this case. This argument is based on the fact that the School District is the taxing authority seeking the tax increase, that the School District is a governmental entity, that the School District is the governmental entity "sponsoring" the tax increase, and because the voters may justifiably rely on the School District's representations in making a decision on how to vote.

■ The question of whether representations by a taxing authority about a tax it seeks may act to void the election is an issue of first impression that has not been developed or decided below. We remand this case for a decision on whether the law on voiding

elections should be extended beyond that set out in *City of Rector, supra*, and if so, whether any conduct alleged against the School District states a cause of action to void the election and make the tax illegal.

### Fiduciary, Constructive Fraud, Unclean Hands

■ DPBS also argues that the election must be voided due to a breach of fiduciary duty by the School District, constructive fraud committed by the School District, and based on the unclean-hands doctrine. These issues were not decided below and will not be decided for the first time on appeal. *Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001).

Reversed and remanded.

CORBIN, J., dissents.

GLAZE, J., not participating.

DONALD L. CORBIN, Justice, dissenting. I respectfully dissent from the majority's decision reversing and remanding this case for a determination of "whether DPBS has stated a cause of action in illegal exaction." Although DPBS contends, and the majority agrees, that they are not pursuing an election contest, that is precisely what is at issue here.

The effect of the majority's opinion is to allow a collateral attack on an election, outside the statutorily mandated twenty-day period, that, in my opinion, could lead to dire consequences for all future elections involving proposed millage increases. A challenge such as this one, filed months after the election, could hinder the timely commencement of improvement projects and result in increased production costs. More importantly, allowing a party to challenge the result of an election at any time may deter investors from purchasing bonds from taxing authorities and may also make creditors reluctant to do business with those taxing authorities. Simply stated, today's decision erodes all confidence in the election process relied on by taxing authorities across the state.

While I am sympathetic to voters who may have been misinformed by the information in the pamphlet circulated by the School District, if there is to be a remedy available to challenge an

election result based on an allegation of misinformation as to a tax's consequences, it is a matter that is properly addressed to the General Assembly, not this court.

For the reasons stated herein, I respectfully dissent.